JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
SHERRY KONSCLER

## DEFENDANTS
SCHUYLKILL COUNTY

**(b)** County of Residence of First Listed Plaintiff   SCHUYLKILL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   SCHUYLKILL
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
John R. Kantner, Esquire
No. 1 Mahantongo Street
Pottsville, PA 17901 (570)-622-2455

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 367 Health Care/ | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | Product Liability | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from Another District *(specify)*
- ☐ 6   Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983

Brief description of cause: Death of inmate in County Prison

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ in excess of 150,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   3/24/2015

SIGNATURE OF ATTORNEY OF RECORD   *John R. Kantner*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF | : |
| | :    **JURY TRIAL DEMANDED** |
| SHERRY KONSCLER, individually, | : |
| and, as ADMINISTRATRIX OF THE | : |
| ESTATE OF MATTHEW KONSCLER, | :    NO. |
| 319 West Centre Street | : |
| Shenandoah, PA 17976 | : |
| | : |
| PLAINTIFF | : |
| | : |
| VS. | : |
| | : |
| SCHUYLKILL COUNTY | : |
| 401 North Second Street | : |
| Pottsville, PA 17901 | : |
| | : |
| AND | : |
| | : |
| SCHUYLKILL COUNTY | : |
| PRISON BOARD | : |
| 401 North Second Street | : |
| Pottsville, PA 17901 | : |
| | : |
| AND | : |
| | : |
| EUGENE BERDANIER, WARDEN | : |
| Schuylkill County Prison | : |
| 230 Sanderson Street | : |
| Pottsville, PA 17901 | : |
| | : |
| AND | : |
| | : |
| PRIMECARE MEDICAL, INC. | : |
| 3940 Locust Lane | : |
| Harrisburg, PA 17109 | : |
| | : |
| AND | |

                                          :
                                          :

SHANNON MCSHAW, M.A.             :
Schuylkill County Prison            :
230 Sanderson Street               :
Pottsville, PA  17901              :
                                          :

      AND                              :
                                          :

CHRISTINE MATZ, LPN            :
Schuylkill County Prison            :
230 Sanderson Street               :
Pottsville, PA  17901              :
                                          :

      AND                              :
                                          :

PAULA DILLMAN-MCGOWAN, CRNP  :
Schuylkill County Prison            :
230 Sanderson Street               :
Pottsville, PA  17901              :
                                          :

      AND                              :
                                          :

TARA HAMM, LPN                :
Schuylkill County Prison            :
230 Sanderson Street               :
Pottsville, PA  17901              :
                                          :

      AND                              :
                                          :

BARBARA BRIGHT, LPN            :
Schuylkill County Prison            :
230 Sanderson Street               :
Pottsville, PA  17901              :
                                          :

      AND                              :
                                          :

NURSES JANE DOE #'s 1, 2, and 3      :
Schuylkill County Prison      :
230 Sanderson Street      :
Pottsville, PA  17901      :
      :
    AND      :
      :
CORRECTIONAL OFFICER      :
ROBERT MURTON      :
Schuylkill County Prison      :
230 Sanderson Street      :
Pottsville, PA  17901      :
      :
    AND      :
      :
CORRECTIONAL OFFICERS      :
JOHN DOE #'s 1, 2, and 3      :
Schuylkill County Prison      :
230 Sanderson Street      :
Pottsville, PA  17901      :
      :
    DEFENDANTS      :

## COMPLAINT

AND NOW, comes Plaintiff, Sherry Konscler, by and through her attorneys, Fanelli, Evans, & Patel, P.C., and complains against the Defendants as follows:

## I.  JURISDICTION

1.    This action is brought pursuant to 42 U.S.C. §1983 and the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. Jurisdiction is based upon 28 U.S.C. §1331 and 1343(a)(1)(3)(4) and the aforementioned

statutory provision. Plaintiff further invokes supplemental jurisdiction of this court pursuant to 28 U.S.C. §1367(a) to hear and adjudicate state law claims.

2.      Plaintiff also brings this action on behalf of the estate of the deceased, Matthew Konscler, under and by virtue of the Pennsylvania Probate, Estate and Fiduciaries Code, 20 Pa. C.S. §3373 and 42 Pa. C.S. §8301 and 8302.

3.      Venue is properly in the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391.

## II.    PARTIES

4.      Plaintiff, Sherry Konscler, is the duly appointed Administratrix of the Estate of Matthew Konscler, deceased, having been named and appointed by the Register of Wills for Schuylkill County, and resides at 319 W. Centre Street, Shenandoah, PA, 17976.

5.      Decedent, Matthew Konscler, was a citizen of the United States and the Commonwealth of Pennsylvania, born on March 26, 1992, who died on March 31, 2013, while an inmate in the custody of the Schuylkill County Prison, Pottsville, Schuylkill County, Pennsylvania.

6.      Defendant, Schuylkill County, is a political subdivision of the Commonwealth of Pennsylvania, duly organized and existing under the laws of the Commonwealth of Pennsylvania with a principal office located at 401 North Second Street, Pottsville, PA, 17901.

7.     Defendant, Schuylkill County, operates, supervises, and funds the Schuylkill County Prison and the Schuylkill County Prison Board, and was at all times material, responsible for stablishing policies and practices, budgets, hiring and training of employees, contracting for specialty services, and providing other administrative duties relevant to the operation of the Schuylkill County Prison, and employs various other Defendants. This Defendant is sued in its official capacity, and at all times material, was acting under color of state law and authority.

8.     Defendant, Schuylkill County Prison Board, is a local governmental agency of Defendant, Schuylkill County, and was at all times material, responsible for establishing policies and practices, budgets, hiring and training of employees, contracting for specialty services, and providing other administrative duties relevant to the operation of the Schuylkill County Prison,  and employs various other Defendants. This Defendant is sued in its official capacity, and at all times material, was acting under color of state law and authority.

9.     Defendant, Eugene Berdanier is a citizen of the United States and the Commonwealth of Pennsylvania, who, at all times relevant hereto, was the Warden of Schuylkill County Prison. Defendant was responsible for establishing and enforcing policy and procedures at Schuylkill County Prison, and also responsible for hiring, training, and supervision of all correctional and medical staff at Schuylkill County Prison.

This Defendant is sued in both his official and individual capacities, and at all times relevant, was acting under color of state law and authority and within the course, scope and authority of his employment with Defendant Schuylkill County and/or Schuylkill County Prison Board.

10.     Defendant, PrimeCare Medical, Inc. (hereinafter "PrimeCare") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal office at 3940 Locust Lane, Harrisburg, PA 17109. At all times relevant, Defendant, Prime Care provided comprehensive medical services to the Schuylkill County Prison including staffing and training of prison nursing and medical personnel, formulating and enforcing policy/procedure regarding medical issues, administering and monitoring the prison detoxification program, performing daily inmate evaluations and distribution of medications, among other duties.

11.     At all times relevant, Defendant PrimeCare acted both directly and through its' agents, employees, and ostensible agents, including the individual Defendants, both identified and unidentified.

12.     Defendant PrimeCare is sued in its' official and individual capacities and at all times relevant, was acting under color of state law and authority, and within the course, scope, and authority of its contractual relationship with

Defendant, Schuylkill County, and/or Schuylkill County Prison Board, and is both directly liable and vicariously liable for the acts of its employees.

13.     Defendant, Shannon McShaw, MA, is a Medical Assistant, who provided medical services to inmates, including, but not limited to decedent, Matthew Konscler, at Schuylkill County Prison. This Defendant is being sued in her individual capacity, and at all times relevant, was acting under color of state law and authority and within the course, scope, and authority of her employment with either Schuylkill County, Schuylkill County Prison Board or Prime Care Medical, Inc.

14.     Defendant, Christine Matz, LPN, is a Licensed Practical Nurse, who provided medical services to inmates, including, but not limited to decedent, Matthew Konscler, at Schuylkill County Prison. Defendant is being sued in her individual capacity, and at all times relevant, was acting under color of state law and authority and within the course, scope, and authority of her employment with either Schuylkill County, Schuylkill County Prison Board, or Prime Care Medical, Inc.

15.     Defendant, Paula Dillman-McGowan, CRNP, is a Certified Registered Nurse Practitioner, who provided medical services to inmates, including, but not limited to decedent, Matthew Konscler, at Schuylkill County Prison. Defendant is being sued in her individual capacity, and at all times relevant, was acting under

color of state law and authority and within the course, scope, and authority of her employment with either Schuylkill County, Schuylkill County Prison Board or Prime Care Medical, Inc.

16.     Defendant, Tara Hamm, LPN, is a Licensed Practical Nurse, who provided medical services to inmates, including, but not limited to decedent, Matthew Konscler, at Schuylkill County Prison. Defendant is being sued in her individual capacity, and at all times relevant, was acting under color of state law and authority and within the course, scope, and authority of her employment with either Schuylkill County, Schuylkill County Prison Board or Prime Care Medical, Inc.

17.     Defendant, Barbara Bright, LPN, is a Licensed Practical Nurse, who provided medical services to inmates, including, but not limited to decedent, Matthew Konscler, at Schuylkill County Prison. Defendant is being sued in her individual capacity, and at all times relevant, was acting under color of state law and authority and within the course, scope, and authority of her employment with either Schuylkill County, Schuylkill County Prison Board, or Prime Care Medical, Inc.

18.     Defendant Nurses, Jane Doe 1 through 3, are currently unidentified nurses and/or healthcare professionals providing medical services to inmates, including, but not limited to decedent, Matthew Konscler, at Schuylkill County

Prison. Defendants are being sued in their individual capacities, and at all times relevant, were acting under color of state law and authority and within the course, scope, and authority of their employment with either Schuylkill County, Schuylkill County Prison Board, or PrimeCare Medical, Inc.

19.   Defendant, Robert Murton, is a Correctional Officer who had been assigned to supervise and care for inmates on D-Block at Schuylkill County Prison at all times relevant, including decedent Matthew Konscler. Defendant is being sued in his individual capacity, and at all times relevant, was acting under color of state law and authority and within the course, scope, and authority of his employment with   Schuylkill County and/or the Schuylkill County Prison Board.

20.   Defendants, John Doe, 1 through 3, are currently unidentified Correctional Officers who had been assigned to supervise and care for inmates on D-Block at Schuylkill County Prison at all times relevant, including decedent, Matthew Konscler. Defendants are being sued in their individual capacity, and at all times relevant, were acting under color of state law and authority and within the course, scope, and authority of their employment with Schuylkill County or the Schuylkill County Prison Board.

## III. **FACTS OF THE CASE**

21.     At all times relevant, decedent, Matthew Konscler, was 21 years old, single, a resident of Shenandoah, Schuylkill County, PA. He was the father of two children, Taylor Rose Konscler, age 4, and Savanna Konscler, age 2.

22.     On March 20, 2013, Matthew Konscler was sentenced to 3 to 18 months in prison upon pleading guilty to possession with intent to deliver and possession of drug paraphernalia. Under the terms of the sentence, he was to report to the Schuylkill County Prison at 9:00 a.m. on March 27, 2013.

23.     Matthew Konscler reported to Schuylkill County Prison on that date as directed. After initial processing by a Corrections Officer, Matthew was taken to the medical unit for medical processing on March 28, 2013.

24.     On that date, he was seen in the medical unit by Defendant Shannon McShaw, a Medical Assistant employed by either Schuylkill County, Schuylkill County Prison Board or Prime Care Medical, Inc.

25.     At that time, McShaw worked at the Schuylkill County Prison only occasionally, once every three months.

26.     During the medical intake interview, McShaw interviewed Matthew Konscler regarding his social and medical history, recording his responses on a health assessment form.

27. In the course of this intake interview, Matthew admitted to heavy use of alcohol and Xanax. He also admitted that he was addicted to heroin, using five to six bags a day, and also addicted to the narcotic pain medication, Percocet.

28. The Medical Intake Form was reviewed by Defendant Christine Matz, LPN, on the evening of March 28, 2013. Matz noted the assessment of alcohol, Percocet, heroin and Xanax addictions, and then contacted a Nurse Practitioner, Defendant Paula Dillman-McGowan, to obtain medication orders.

29. Acting on the information provided by Matz, the Nurse Practitioner ordered a regimen of medication for detoxification of the heroin, Xanax and opiates, to commence on March 29, 2013.

30. Detox medications included Tylenol with Codeine, Librium, and other medications. The detox regimen did not include Morphine, Xanax, heroin or other opiates.

31. Throughout the detox process, it is imperative that the medications be taken on a regular basis at the prescribed doses, on a sliding scale of dosages, to gradually abate the effects of the addictions.

32. Throughout the detoxification process, it is imperative that no medications are ingested which will counter the effects of the detox process, and that would mimic the addictions being treated.

33.    For these reasons, it is imperative that the inmates receiving detoxification regimens be monitored closely, to ensure that they are ingesting all the prescribed medications, and that they are not in possession of any non-prescribed, or contraband, drugs or medication.

34.    Despite a history of multiple drug addictions, Matthew Konscler was not examined by a physician at any time during his stay at the Schuylkill County Prison.

35.    Following his initial medical evaluation, Matthew Konscler was placed on a standard 72 hour medical surveillance lockdown before being released to the general inmate population. During this lockdown, inmates are generally confined to their cells or cell blocks, separated from the general inmate population. While in this medical surveillance, inmates receive their medications and meals in their cells, or within the cell block.

36.    It is known that inmates undergoing the detox protocols will attempt to "hoard" their medications, or otherwise attempt to obtain additional doses of their medication in an attempt to satisfy their addictions.

37.    For this reason, it is imperative that the medical staff and corrections officers closely monitor the medication administration process, and closely observe the inmate to ensure that these doses are actually ingested by the inmate at the time of administration.

38.     The medical staff and corrections officers failed to properly monitor the inmates, including decedent,  during the medication administration process, despite knowledge of the inmates' propensity to hoard medication doses, and despite knowledge of the serious adverse impact to inmates' health and safety if the detox medications are not ingested by the inmates as prescribed.

39.     The prison administration, specifically Defendants Berdanier, County, Prison Board, PrimeCare Medical, Hamm and Dillman-McGowan, were aware of these practices by the medical staff and corrections officers, and did nothing to address or correct the situation.

40.     Matthew Konscler was housed in cell D-13, along with two other inmates that were also undergoing the detox regimen.

41.     The door to cell D-13 was configured so that an open space at the bottom of the door allowed for items to be passed from outside of the cell into the inmates occupying the cell, including Konscler.

42.     Throughout March 28, 29, and 30, 2013, Konscler received numerous items in this manner, including cigarettes.

43.     Upon information and belief, Konscler also received doses of heroin and other contraband substances in this manner, which he ingested in his cell.

44.     Alternatively, Konscler received doses of heroin and other contraband substances during the medication administration process, coming into close contact

with other inmates during these times, and in the presence of nursing personnel and corrections officers.

45.    Despite video surveillance, the corrections officers failed to detect even one episode of contraband being passed under the door to Konscler, or being passed to Konscler during the medication administration process.

46.    Despite knowing that Matthew Konscler and the other inmates of cell D-13 were on the detox protocols, the corrections officers failed to properly and effectively monitor and observe the activities around this cell.

47.    During the evening of March 30, 2013, Matthew Konscler and the other inmates received their usual doses of detox medications, and were returned to their cells.

48.    At some time prior to 11:00 p.m., Matthew Konscler complained to his cellmates of headaches and a pain around his eyes. Konscler then lay down on the top bunk to go to sleep. The other inmates did the same in their bunks.

49.    At some point during the night, Konscler's cellmate, Delgado, checked on Konscler because he had stopped snoring. Delgado found Konscler unresponsive with a purplish color.

50.    The cellmates immediately began banging on the cell door to alert the corrections officers. A kitchen worker heard the sounds around 7:30 a.m., and notified Corrections Officer Murton.

51.     Matthew Konscler was examined by Corrections Officer Murton, who noted Konscler to be cold, unresponsive, and discolored. He also noted a frothy substance around his mouth and nose. Medical personnel were summoned, and the Deputy Coroner pronounced Matthew Konscler dead around 8:25 a.m.   the morning of March 31, 2013,

52.     An autopsy was conducted on April 2, 2013, by Dr. R. Starling-Roney, M.D. of Forensic Pathology Associates in Allentown. Based on the autopsy findings, and the results of the toxicology studies, Dr. Starling-Roney concluded that the cause of death was "mixed substance toxicity".

53.     A Coroner's Inquest into the death of Matthew Konscler was convened on March 31, 2014. During this inquest, testimony was received from Addiction Treatment Specialist, Carol Ann Littzi, D.O. Dr. Littzi reviewed the toxicology reports, and noted that an active metabolite of heroin was detected in Mathew Konscler's urine and blood at the time of death.

54.     Dr. Littzi offered the opinion that the presence of this metabolite found that Matthew Konscler had ingested heroin no greater than eight hours prior to his death.

55.     At the conclusion of the Coroner's Inquest, the jury returned their finding that Matthew Konscler's death was due to accidental drug overdose, and

that this overdose was due to neglect. As stated by the inquest jurors in the official transcript of the hearing:

> "We believe that with the system, there was various things, such as the security guards, and cameras and videos. There was definitely something going on where something was passed around and if it's on the camera, on the video. And apparently, it's been going on for some time and nothing is being done about it. If the cameras were monitored and something would have-someone would have stepped in and corrected that problem we believe that this wouldn't have happened. So we believe there was neglect."

(Transcript of Coroner's Inquest, Page 182).

## COUNT I
## DELIBERATE INDIFFERENCE TO CIVIL RIGHTS, PURSUANT TO 42 U.S.C. §1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS. PLAINTIFF VS. ALL DEFENDANTS

56. Paragraphs 1-55 of this Complaint are incorporated herein by reference, as if more fully set forth at length.

57. Defendants knew, or should have known, that decedent had reported consuming heroin, Percocet, and alcohol the same morning he had reported to prison, as set forth in the medical intake documentation.

58. Defendants knew and/or should have known that an inmate with decedent's history of recent multiple drug usage and addictions would attempt to continue this practice of drug usage while incarcerated.

59. Defendants knew, or should have known, that inmates undergoing the detox protocol, which was initiated upon their incarceration, would be especially vulnerable to the effects and clinical symptoms of withdrawal from the source of their addiction, and as a result, would actively attempt to procure and ingest contraband substances while incarcerated.

60. Defendants are responsible for ensuring the health, safety and well-being of inmates placed under their custody and control, and are responsible for enacting, enforcing and administering appropriate policy, procedure and practices to carry out this function.

61. In deliberate indifference to decedent's constitutional rights, Defendants failed to ensure that decedent was personally examined by a physician during his incarceration at Schuylkill County Prison.

62. In deliberate indifference to decedent's constitutional rights, Defendants failed to properly and sufficiently monitor the administration of the detox medications to decedent and other inmates, to ensure that the medication was actually ingested by the inmate and to prevent "hoarding" of medications by the inmates, particularly, decedent.

63.   In deliberate indifference to decedent's constitutional rights, Defendants failed to properly and sufficiently monitor the administration of the detox medications to decedent and other inmates, to prevent the passing of contraband substances, such as heroin and other opiate narcotic drugs, between inmates, including decedent.

64.   In deliberate indifference to decedent's constitutional rights, Defendants failed to house decedent in a properly constructed cell, so as to prevent the passing of contraband substances, such as heroin and other opiate drugs, to decedent by other inmates.

65.   In deliberate indifference to decedent's constitutional rights, Defendants failed to observe and monitor decedent's cell so as to detect or prevent the passing of contraband substances, such as heroin and other opiate drugs, to decedent.

66.   In deliberate indifference to decedent's constitutional rights, Defendants failed to observe, supervise, control and monitor the activity of inmates in and around decedent's cellblock, so as to detect or prevent the passing of contraband substances, such as heroin and other opiate drugs, to decedent.

67.   In deliberate indifference to decedent's constitutional rights, Defendants failed to properly and adequately monitor, control and observe decedent, in view of his history of multi-substance addiction and substance abuse,

and his current participation in the detox regimen, so as to detect efforts by decedent to obtain contraband substances or prevent the passing of contraband substances to decedent.

68.   As a direct and proximate result of Defendants' deliberate indifference to decedent's constitutional rights, as set forth herein, decedent was provided with heroin and other opiate drugs, and ingested same within the Schuylkill County Prison, resulting in serious physical injury, pain and suffering, mental anguish, and death from an accidental overdose.

WHEREFORE, pursuant to 42 U.S.C. §1983, Plaintiff demands compensatory damages against each Defendant jointly and severally, in an amount in excess of One Hundred Fifty Thousand and 0/100 dollars ($150,000.00), plus punitive damages, reasonable attorney fees and costs, and such other and further relief as this court deems appropriate.

## COUNT II
## DELIBERATE INDIFFERENCE TO DECEDENT'S SERIOUS MEDICAL NEEDS, PURSUANT TO 42 U.S.C. 1983 AND THE EIGHTH AMENDMENT.
## PLAINTIFF VS. ALL DEFENDANTS

69.   Paragraphs 1-68 of this Complaint are incorporated herein by reference, as if more fully set forth at length.

70.     Decedent's multiple drug addictions, together with the physiological effects of the detox regimen initiated by Defendants, constituted a serious medical need of which defendants knew, or should have known, and the actions and/or inactions of defendants, acting under color of state law, as set forth previously in this Complaint, constituted deliberate indifference to Decedent's serious medical needs, which could be expected to lead to serious physical injury, substantial pain and suffering, emotional distress, and death, all of which did occur.

71.     On the same basis set forth in Count I of this Complaint, Defendants acted with deliberate indifference to decedent's serious medical needs.

72.     As a direct and proximate result of Defendants' deliberate indifference to decedent's serious medical needs, as set forth herein, decedent was provided with heroin and other opiate drugs, and ingested same within the Schuylkill County Prison, resulting in serious physical injury, pain and suffering, mental anguish, and death from an accidental overdose.

WHEREFORE, pursuant to 42 U.S.C. §1983, Plaintiff demands compensatory damages against each Defendant jointly and severally, in an amount in excess of One Hundred Fifty Thousand and 0/100 dollars ($150,000.00), plus punitive damages, reasonable attorney fees and costs, and such other and further relief as this court deems appropriate.

**COUNT III**
**DELIBERATE INDIFFERENCE TO CIVIL RIGHTS, PURSUANT TO 42**
**U.S.C. §1983  AND THE FOURTH, EIGHTH AND FOURTEENTH**
**AMENDMENTS**
**PLAINTIFF VS. DEFENDANTS SCHUYLKILL COUNTY, SCHUYLKILL**
**COUNTY PRISON BOARD, BERDANIER, PRIME CARE MEDICAL,**
**INC.,   HAMM , DILLMAN-McGOWAN.**
**PATTERN, PRACTICE AND POLICY**

73.    Paragraphs 1-72 of this Complaint are incorporated herein by reference, as if more fully set forth at length.

74.    Defendants acted with deliberate indifference to decedent's constitutional rights by having a known pattern, practice, and/or policy of inadequate observation and supervision of inmates in their care, custody and control, including those who are undergoing detox treatment such as decedent.

75.    Defendants acted with deliberate indifference to decedent's constitutional rights by having a known pattern, practice, and/or policy of permitting inadequate supervision of their correctional and medical staff. Specifically, Defendants' supervisory or administrative staff failed to ensure that the medical personnel and correctional officers provided adequate and thorough monitoring and observation of the administration of medications to inmates.

76.    Defendants acted with deliberate indifference to decedent's constitutional rights by having a known pattern, practice and/or policy of permitting inadequate supervision of inmates receiving detox medications to

ensure that inmates were complying with the detox regimen, and not "hoarding" their medication.

77.    Defendants    acted    with    deliberate    indifference    to    decedent's constitutional rights by having a known pattern, practice, and/or policy of failing to house inmates receiving detox treatment in cells which restricted the access to other inmates and which restricted the potential for contraband to be passed to inmates undergoing detox.

78.    Defendants    acted    with    deliberate    indifference    to    decedent's constitutional rights by having a known pattern, practice and policy of failing to monitor individual cells and cell blocks in which inmates undergoing detox were housed, to prevent and deter the passing of contraband substances to such inmates, including decedent.

79.    Defendants    acted    with    deliberate    indifference    to    decedent's constitutional rights by having a known pattern, practice and policy of failing to monitor surveillance cameras in order to prevent and deter the passing of contraband substances to inmates undergoing detox, such as decedent.

80.    Defendants    acted    with    deliberate    indifference    to    decedent's constitutional rights by having a known pattern, practice and policy of failing to train corrections officers and medical personnel in the correct and proper monitoring of the inmates' medication administration and detox regimens.

81. Defendants acted with deliberate indifference to decedent's constitutional rights by having a known pattern, practice and policy of failing to train the correctional officers in the proper procedures for monitoring inmates undergoing detox to prevent the passing of contraband substances into these inmates' cells.

82. Defendants acted with deliberate indifference to decedent's constitutional rights by having a known pattern, practice and policy of failing to enact and/or enforce policy and procedures at the Schuylkill County Prison for:

(a) requiring monitoring of detox inmates;

(b) requiring monitoring of the medication administration process to inmates undergoing detox;

(c) requiring monitoring of cells of inmates undergoing detox to detect and prevent the passing of contraband substances to these inmates; and,

(d) requiring that a physician examine inmates undergoing detox.

83. As a direct and proximate result of Defendants' deliberate indifference to decedent's constitutional rights, as set forth herein, decedent was provided with heroin and other opiate drugs, and ingested same within the Schuylkill County Prison, resulting in serious physical injury, pain and suffering, mental anguish, and death from an accidental overdose.

WHEREFORE, pursuant to 42 U.S.C. §1983, Plaintiff demands compensatory damages against each Defendant jointly and severally, in an amount in excess of One Hundred Fifty Thousand and 0/100 dollars ($150,000.00), plus punitive damages, reasonable attorney fees and costs, and such other and further relief as this court deems appropriate.

**COUNT IV**
**ALTERNATIVE CLAIM IN NEGLIGENCE**
**PLAINTIFF VS. DEFENDANTS PRIMECARE MEDICAL, INC.,**
**McSHAW, MATZ, DILLMAN-McGOWAN, HAMM, BRIGHT AND**
**NURSES JANE DOE #1,2,3**

84.     Paragraphs 1-83 of this Complaint are incorporated herein by reference, as if more fully set forth at length.

85.     At all times relevant, Defendant PrimeCare provided comprehensive medical services to the Schuylkill County Prison, including but not limited to, staffing and training of prison nursing and medical personnel, formulating and enforcing policy and procedure regarding medical issues, performing daily inmate medical evaluations, administering and monitoring the inmate detoxification program, and distributing medications to the inmates.

86. At all times relevant, Defendant PrimeCare acted both directly and through its' agents, employees and ostensible agents, including both identified and unidentified individual defendants.

87.     Alternatively, at all times relevant, Defendants McShaw, Matz, Dillman-McGowan, Hamm, Bright and/or Nurses Jane Doe #1,2,3 (hereinafter "The Medical Staff Defendants"), were agents, servants, ostensible agents of Defendant PrimeCare, acting within the course and scope therof in providing nursing and medical services to the inmates at Schuylkill County Prison.

88.     As an alternative Cause of Action, Defendant PrimeCare and The Medical Staff Defendants owed a duty of reasonable care to decedent, as an inmate of the Schuylkill County Prison who was under the complete custody, control, and care of all Defendants during his incarceration.

89.     As an alternative Cause of Action, the injuries and damages to Plaintiff and Decedent were caused by the negligence, carelessness and deviations from accepted standards of care of Defendant PrimeCare and The Medical Staff Defendants, in the following regards:

        (a)     failing to ensure that decedent was personally examined by a physician during his incarceration at Schuylkill County Prison.

        (b)     failing to properly and sufficiently monitor the administration of the detox medications to decedent and other inmates, to ensure that the medication was actually ingested by the inmate and to prevent "hoarding" of medications by the inmates, particularly, decedent.

(c)     failing to properly and sufficiently monitor the administration of the detox medications to decedent and other inmates, to prevent the passing of contraband substances such as heroin and other opiate narcotic drugs, between inmates, including decedent.

(d)     failing to observe and monitor decedent's cell so as to detect or prevent the passing of contraband substances to decedent.

(e)     failing to observe, supervise, control and monitor the activity of inmates in and around decedent's cellblock, so as to detect or prevent the passing of contraband substances to decedent.

(f)     failing to properly and adequately monitor, control and observe decedent, in view of his history of multi-substance addiction and substance abuse, and his current participation in the detox regimen, so as to detect efforts by decedent to obtain contraband substances or prevent the passing of contraband substances to decedent.

90.     In addition to the above, as an alternative Cause of Action, Defendants PrimeCare Medical, Inc., Hamm and/or Dillman-McGowan acted with negligence, carelessness and deviated from accepted standard of care in the following regards:

(a)     adopting and condoning a known pattern, practice, and/or policy of inadequate observation and supervision of inmates in their care, custody and control, including those who are undergoing detox treatment such as decedent.

(b)     adopting and condoning a known pattern, practice, and/or policy of permitting inadequate supervision of the correctional and medical staff.

(c)     failing to ensure that the medical personnel and correctional officers provided adequate and thorough monitoring and observation of the administration of medications to inmates.

(d)     adopting and condoning a known pattern, practice and/or policy of permitting inadequate supervision of inmates receiving detox medications to ensure that inmates were complying with the detox regimen, and not "hoarding" their medication.

(e)     failing to train corrections officers and medical personnel in the correct and proper monitoring of the inmates' medication administration and detox regimens.

(f)     failing to train the correctional officers in the proper procedures for monitoring inmates undergoing detox to prevent the passing of contraband substances into these inmates' cells.

(g)     failing to enact and/or enforce policy and procedure at the Schuylkill County Prison for:

(1)     requiring monitoring of detox inmates;

(2)     requiring monitoring of the medication administration process to inmates undergoing detox;

(3)     requiring monitoring of cells of inmates undergoing detox to detect and prevent the passing of contraband substances to these inmates; and,

(4)     requiring that a physician examine inmates undergoing detox.

91.     As an alternative Cause of Action, the negligence, carelessness and deviations from applicable standards of care of The Medical Staff Defendants were done during the course and scope of their employment, agency, servitude and/or ostensible agency with Defendant PrimeCare Medical, Inc., as a result of which, this latter Defendant is vicariously liable to Plaintiff.

92.     As a direct and proximate result of Defendants' negligence, carelessness and deviations from applicable standards of care, as set forth herein, decedent was provided with heroin and other opiate drugs, and ingested same within the Schuylkill County Prison, resulting in serious physical injury, pain and suffering, mental anguish, and death from an accidental overdose.

WHEREFORE, Plaintiff demands compensatory damages against each Defendant jointly and severally, in an amount in excess of One Hundred Fifty Thousand and 0/100 dollars ($150,000.00), plus punitive damages, reasonable attorney fees and costs, and such other and further relief as this court deems appropriate.

### COUNT V
### WRONGFUL DEATH ACT 42 PA. C.S. §8301
### PLAINTIFF VS. ALL DEFENDANTS

93.  Paragraphs 1-92 above are incorporated herein by reference as if more fully set forth at length.

94.  As a result of the deliberate indifference to decedent's constitutional rights and negligence on the part of Defendants, as described more fully above, decedent, Matthew Konscler, age 21 years, died of an accidental drug overdose while an inmate at the Schuylkill County Prison, on March 31, 2013.

95.  Plaintiff's decedent did not bring any action during his lifetime, nor has any other action for the death of Plaintiff's decedent been commenced against Defendants herein.

96.  Plaintiff's decedent died intestate. The intestate heirs to his estate consist of his minor children, Taylor Rose Konscler, DOB: 11/23/2009, and Savanna Marie Konscler, DOB: 6/12/2012.

97.    Plaintiff, Sherry Konscler, individually, and as administratrix of the estate of Matthew Konscler, has a right to and does bring this action under and by virtue of the Act of the Legislature of the Commonwealth of Pennsylvania known as the Wrongful Death Act, 42 Pa. C.S.A. §8301 and 20 Pa. C.S.A. §3373,

98.    As a direct and proximate result of the acts of all Defendants, as more fully set forth above, Plaintiff and the wrongful death beneficiaries have, and will continue to be deprived of the affection, aid, society, and comfort of the decedent.

99.    Plaintiff claims damages for the pecuniary losses suffered by Plaintiff by reason of the death of Matthew Konscler, as well as the loss of affection, aide, society, and comfort of decedent, and reimbursement of hospital, medical, and funeral expenses, expenses of estate administration, and other expenses incurred in connection therewith, and all other damages compensable under the Pennsylvania Wrongful Death Act.

100.    Plaintiff individually, and on behalf of the wrongful death beneficiaries, claim entitlement to seek compensation for the monetary support that decedent, Matthew Konscler, would have provided during his lifetime.

WHEREFORE,    pursuant    to    42    U.S.C.    §1983,    Plaintiff    demands compensatory damages against each Defendant jointly and severally, in an amount in excess of One Hundred Fifty Thousand and 0/100 dollars ($150,000.00), plus

punitive damages, reasonable attorney fees and costs, and such other and further relief as this court deems appropriate.

## COUNT VI
## SURVIVAL ACTION 42 PA. C.S.A.§8302
## PLAINTIFF VS. ALL DEFENDANTS

101.   Paragraphs 1-100 above are incorporated herein by reference as if more fully set forth at length.

102.   Plaintiff, Sherry Konscler, as Administratrix of the Estate of Matthew Konscler, deceased, brings this action on behalf of the estate by virtue of the Act of Legislature of the Commonwealth of Pennsylvania, known as the Survival Act 42 Pa. C.S.A. §8302 and 22 Pa. C.S.A. §3371 and 3373.

103.   Plaintiff, Sherry Konscler, as Administratrix of the Estate of Matthew Konscler, claims on behalf of the estate of Matthew Konscler, damages for pain and suffering undergone by decedent as a result of the deliberate indifference to decedent's civil rights and negligence of Defendants herein, up to and including the time of his death.

104.   As a result of the death of Matthew Konscler, his estate has been deprived of the economic value of decedent's life during the period of his life expectancy, and Plaintiff, as Administratrix of the Estate of Matthew Konscler, deceased, claims damages for the pecuniary loss suffered by the estate as a result

of decedent's death, as well as for the conscious pain and suffering undergone by the decedent up to and including the time of his death, and for all other damages permitted by the Pennsylvania Survivorship Statute.

WHEREFORE, pursuant to 42 U.S.C. §1983, Plaintiff demands compensatory damages against each Defendant jointly and severally, in an amount in excess of One Hundred Fifty Thousand and 0/100 dollars ($150,000.00), plus punitive damages, reasonable attorney fees and costs, and such other and further relief as this court deems appropriate.

Respectfully Submitted:

By: */s/ John R. Kantner, Esq.*

JOHN R. KANTNER, ESQUIRE
Attorney I.D. No. 75741
No. 1 Mahantongo Street
Pottsville, PA 17901
(570) 622-2455
*Attorney for Plaintiff*

## **VERIFICATION**

The language of the foregoing document is that of counsel and not necessarily my own; however, I have read the foregoing document and to the extent it is based upon information I have given to counsel, it is true and correct to the best of my knowledge, information and belief; to the extent that the content of the foregoing document is that of counsel, I have relied upon counsel in making this verification.

I understand that false statements herein are made subject to the penalties of 18 Pa.C.S.A Section 4904, relating to unsworn falsification to authorities.

_____
SHERRY KONSCLER